Earl L. Bohachek (CSBN 55476)
Westamerica Bank Building
1108 Fifth Avenue
Third Floor
San Rafael, CA  94901
elbohachek@aol.com
Telephone:  415 455 0700
Facsimile:  415 456 0266

John R. Elrod (71026)
Vicki Bronson (97058)
Conner & Winters, LLP
4375 N. Vantage Drive
Suite 405
Fayetteville, AR  72703
jelrod@cwlaw.com
Telephone:  479 582 5711
Facsimile:  479 587 1426

Pro Hac Vice

Attorneys for Plaintiff John Brown University

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| **JOHN BROWN UNIVERSITY,** an Arkansas Non-Profit Corporation,<br><br>                    Plaintiff,<br>vs.<br><br>**MAJOR MARKET STATIONS, INC.,** a California corporation; **CHARISMA IN MISSIONS, INC.,** a California corporation; **MARILYNN KRAMAR TRUST**; and **E.D.I. MEDIA, INC.,** a California corporation,<br><br>                    Defendants. | Case No.:<br><br>**COMPLAINT FOR INVOLUNTARY DISSOLUTION OF MAJOR MARKET STATIONS, INC.** |

Plaintiff John Brown University, an Arkansas Non-Profit Corporation ("Plaintiff"),

alleges as follows:

1

**COMPLAINT**

## NATURE OF THE ACTION / BACKGROUND

1.      In 1988, Celia Webb named John Brown University as a Beneficiary of her Irrevocable Living Trust and in 1999 Ms. Webb left all of her interests in defendant Major Market Stations, Inc. to John Brown University through a beneficiary designation in her Irrevocable Living Trust – four hundred fifty (450) shares of capital stock of Major Market Stations, Inc.  John Brown University is now, and at all relevant times herein has been, a thirty percent (30%) shareholder of defendant Major Market Stations, Inc.

2.      Jere Laird, Trustee of the Celia D. Webb Trust and a grand-nephew of Ms. Webb, wrote John Brown University a letter dated September 1, 2000 and in the letter he asked that any funds realized by John Brown University, as a shareholder in defendant Major Market Stations, Inc., be used to establish a scholarship fund to be invested and used at the discretion of John Brown University to aid students studying at the University and calling it the "T. Myron Webb and Celia D. Webb Scholarship Fund".  To date, John Brown University has never received any funds of any kind as a shareholder, or otherwise, from defendant Major Market Stations, Inc., even though the asset value of the corporation is in excess of $6,169,000 based upon an Appraisal dated June 1, 2014.  The Appraisal covers three (3) facilities owned by defendant Major Market Stations, Inc. including properties in Corona, California, San Bernardino County, California and Apple Valley, California.  The property in Corona, California is a 6.69 acre parcel that has full offsite improvements in place including a paved street.  There are five (5) AM radio transmission towers, along with reception and transmission equipment, together with a freestanding office building, along with fencing, landscaping and hardscaping.  The main building on the site is an office/broadcasting facility totaling 2,918 square feet.  The property in San Bernardino County is a parcel containing 39.93 acres, commonly known as Cloudland.  There are several radio transmission towers located on the site.  The property located in Apple

**COMPLAINT**

Valley, California is a 2.4 acre site with two (2) AM radio transmission towers. The appraised value of the thirty percent (30%) ownership is thus $1,850,700.

### THE PARTIES AND THEIR RELATIONSHIPS

3.     Plaintiff is an Arkansas Non-Profit Corporation in good standing, doing business in Siloam Springs, Arkansas. John Brown University was founded in the year 1919 and has over 2,500 students. It was recently ranked No. 2 by U.S. News & World Report among regional baccalaureate Southern colleges in 2016. It has a 200 acre campus in Arkansas and tuition is presently $23,398 annually. The annual cost of attending for an undergraduate is approximately $33,132.

4.     Defendant Major Market Stations, Inc. is a California corporation doing business in Glendale, California. Defendant Charisma In Missions, Inc. is a California corporation doing business in Montebello, California. Defendant EDI Media, Inc. is a California corporation doing business in West Covina, California. Defendant Marilynn Kramar Trust is a California Trust in Glendale, California.

5.     At present, and at all relevant times herein, the Board of Directors of defendant Major Market Stations, Inc. consists of Marilynn Kramar, Esther Garzon, a Major Market employee and long-time friend of Ms. Kramar, John Kramar, Marilynn Kramar's former brother-in-law, and James Su, a long time Kramar family friend, whose company, EDI Media, Inc. now owns two percent (2%) of the shares of stock of Major Market Stations, Inc. EDI Media, Inc. also leases air time on the radio station run by defendant Major Market Stations, Inc.

6.     As set out above, plaintiff owns a thirty percent (30%) interest as a shareholder in Major Market Stations, Inc. Defendant Charisma In Missions, Inc., a California corporation, owns forty-eight percent (48%) of the stock. The Marilynn Kramar Trust owns twenty percent (20%) of the stock and EDI Media, Inc. owns two percent (2%) of the stock. $100,000 was paid

3

for the stock in the year 2009 with Director James Su participating in this related party transaction.  Based upon the Appraisal in the sum of $6,169,000, a two percent (2%) interest in the corporation is worth approximately $100,000 – in the same fashion as plaintiff's thirty percent (30%) ownership is worth $1,850,700.

7.     The primary business of defendant Major Market Stations, Inc. is the maintenance of radio broadcasting transmitting and receiving equipment, the rendering of relay service in connection with such radio broadcast transmission and providing multi-lingual radio programming.  Its Corporate Mission Statement states that it "will strive to become the <u>most successful multi-lingual radio station in America</u>" and that "we will provide excellent programming, superior service to our listeners and clients, and create innovative programming and promotions" and, importantly, that "we will be **exceptionally profitable** for the ownership and provide <u>excellent compensation and benefits to each staff/team member</u>" and that "we will be dedicated to promoting the Moral and Spiritual principles which constitute the foundations of Freedom and Democracy".  Importantly, here, however, the corporation has <u>never</u> been "profitable" let alone "exceptionally profitable", even though the corporation has assets in excess of $6,000,000.  The corporation's recent Profit & Loss Statement lists "administrative salaries", including salaries to Directors Marilynn Kramar and Esther Garzon, totaling over $321,000 – constituting twenty-eight percent (28%) of enterprise revenue, so that the corporation shows a loss, each and every year, over the past several years.  While not providing any profit to <u>shareholders</u>, there **has** been "<u>excellent compensation and benefits" paid to Ms. Kramar and Ms. Garzon, among others</u>.  The corporation has clearly been **mismanaged** in that a $6,000,000 enterprise somehow cannot produce a profit and refuses to pay dividends to any shareholder, including plaintiff – for reasons unknown to plaintiff.

COMPLAINT

8.      Defendant Major Market Stations, Inc. operates two (2) AM radio stations – KWRM at 1370 AM and KWRM at 1550 AM.  The corporation's website states that "KWRM 1370 AM is located in the Inland Empire and KWRM 1550 AM is located in the High Dessert Area".  The website states that the corporation, further, specializes in "multi-lingual broadcasting covering 5 Southland Counties including Los Angeles, Riverside, San Bernardino, Orange and North San Diego County".  Most of KWRM's programming is in Chinese and Spanish although there are some English-language shows, especially sporting events and talk shows.  The current Chinese broadcasting schedule is from 8:00 a.m. to 11:00 p.m., daily, sponsored by EDI Media, Inc.  KWRM was the flagship station of the Orange County Flyers of the Golden Baseball League and in the mid-2000s KWRM was often referred to as "The Worm", with a fledgling sports program featuring local nationally-recognized high school football programs and the station also simulcasted the USC football Trojans for several seasons.  In the summer of 2005, KWRM began producing several upstart sport talk shows that gained local notoriety and controversy.  Given this history, the statement regarding "Christian broadcasting" made by the attorney representing defendant Major Market Stations, Inc., as set out below at ¶17, seems incorrect.  Indeed, it would appear that most of the programming on KWRM is not religious or faith-based programs, as the KWRM website lists the following six (6) kinds of radio programs: "various types of music, news, weather and traffic; public affairs & community service; religious programming; sporting events; and educational shows".  Indeed, the website boasts that KWRM has "a wide variety of programs catering to a diverse region of South California".  The EDI Media, Inc. website states that KWRM is a "subordinate company" of EDI Media, Inc.

EARL L. BOHACHEK

**COMPLAINT**

**JURISDICTION AND VENUE**

9.       The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 inasmuch as there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.      Venue is proper in this District pursuant to 28 U.S.C. §1391(a)(3) because the Defendants are subject to personal jurisdiction in this District and there is no District in which this action may otherwise be properly brought.

11.      Venue is also proper in this District pursuant to 28 U.S.C. §1391(a)(2) because a substantial portion of the acts and conduct that are the subject of this action occurred in this District.

12.      This action is brought pursuant to California Corporations Code §1800, seeking involuntary dissolution of the corporate defendant Major Market Stations, Inc. on the statutory grounds set forth.

**GROUNDS FOR INVOLUNTARY DISSOLUTION**

13.      The California Corporations Code provides for involuntary dissolution of a corporation for a number of reasons, including that a controlling interest has been "guilty of or has knowingly countenanced persistent and pervasive fraud, mismanagement <u>or</u> abuse of authority <u>or</u> persistent unfairness toward any shareholders <u>or</u> its property is being misapplied or wasted by its directors or officers." (emphasis added).  California Corporations Code §1800(b)(4).  Here, the controlling shareholders are guilty of, or have knowingly countenanced, persistent and pervasive mismanagement, abuse of authority, persistent unfairness toward plaintiff and, additionally, corporate property is being misapplied and wasted by Directors and officers in that no profit has been generated by a corporation with over $6,000,000 in assets and, as no profits were generated, no scholarships to John Brown University can be offered by a thirty

6

percent (30%) shareholder of the corporation, plaintiff herein.  Where a corporation has thirty-five (35) or fewer shareholders and at least one-third (1/3) of the outstanding shares desire dissolution, a corporation may be dissolved if "liquidation is reasonably necessary for the protection of the rights or interests of the complaining shareholder or shareholders".  *Id.* §1800(b)(5).  That is the case here, given the wishes of Ms. Webb and the desire of plaintiff to provide scholarships to needy students at John Brown University.  In calculating whether one-third (1/3) of the outstanding shares are held, the shares owned by shareholders participating in the wrongful conduct are excluded – hence plaintiff owns at least thirty-three and one-third percent (33-1/3%) of the number of outstanding shares of the defendant corporation, exclusive of the shares owned by defendants Charisma In Missions, Inc., a California corporation; Marilynn Kramar Trust; and E.D.I. Media, Inc., a California corporation.

14.    Marilynn Kramar is herself a principal in Charisma In Missions, Inc. – a corporation that does, indeed, make a profit, for Ms. Kramar, and others.  So, too, Ms. Garzon is also active in Charisma In Missions, Inc.  Both Ms. Kramar and Ms. Garzon receive a salary from defendant Major Market Stations, Inc. for doing very little, if anything, for the corporation.  Ms. Kramar and Ms. Garzon have also participated, wrongfully, in approving and authorizing their own salaries.  Both women have engaged in related party transactions by and between defendant Major Market Stations, Inc. and Charisma In Missions, Inc., including loan transactions.  Esther Garzon is Vice-President and Program Director for defendant Major Market Stations, Inc., as well as Vice-President for Charisma In Missions, Inc. – having held that title since January of 1972.  So, too, Director James Su has engaged in related party transactions with his company, EDI Media, Inc., purchasing radio air time from defendant Major Market Stations, Inc. by way of a less than arms-length transaction, inasmuch as Mr. Su is, and at all relevant times was, a Director.

7

15.     There has been, at all relevant times herein, and now exists, internal dissention between two (2) factions of shareholders of the defendant corporation and the factions are so deadlocked that the business of the corporation can no longer be conducted with advantage or profit to its shareholders, inasmuch as plaintiff seeks revenue or dividends from a corporation having assets of more than $6,000,000 which should be, if properly run, profitable so that monies could, and should, be used to fund scholarships, in accordance with the wishes of both Celia Webb and plaintiff – while the remaining defendants oppose paying corporate dividends or monies to provide scholarships – believing that Ms. Webb desired "to further Christian broadcasting", only, so that continuing business without making a profit is perfectly acceptable and proper.  As pointed out above, the defendant Major Market Stations, Inc. does not broadcast "Christian broadcasting" only and there are better options available to "further Christian broadcasting" by way of utilizing the asset value of the defendant corporation for the benefit of all parties and shareholders.  It is only by way of liquidation, accordingly, that plaintiff can realize the value of its ownership interest in this corporation.  Alternatively, liquidation may be avoided by the defendants utilizing the provisions of California Corporations Code §2000, determining fair value of the thirty percent (30%) shares held by plaintiff, taking into the account the possibility of sale of the entire business as a going concern in a liquidation.

16.     The four (4) Directors and the three (3) shareholder defendants, who are in control of the corporation, have been guilty of or knowingly countenanced persistent mismanagement, abuse of authority or unfairness toward plaintiff, and have engaged in wrongful and secret related party transactions – making certain that the corporation does not make a profit, and merely "breaks even", each year – refusing to consider the possibility that at least some corporate assets be sold, relocated or leased – freeing up a considerable amount of corporate asset value

8

EARL L. BOHACHEK

**COMPLAINT**

and thus allowing scholarships to be provided by plaintiff to deserving students at John Brown University.

17.     Prior to filing suit, plaintiff sought to resolve this dispute by way of compromise, but was notified as follows by the attorney representing Major Market Stations, Inc.:

> To date there have been <u>no dividend distributions</u> and <u>none are presently planned</u>.

* * *

> The correspondence trail reveals your and your predecessors' pitch that <u>Celia Webb's gift was to benefit JBU students</u>. While an intended benefit would be expected, <u>our take</u> on how that benefit was to be delivered is <u>far different</u> than a JBU cash infusion. Our review demonstrates it was Celia Webb's <u>consistent desire to further Christian broadcasting</u> and the ongoing business activities of MMS, which by the way is radio broadcasting as the Articles of Incorporation highlight. It would not be Celia Webb's desire to shut down MMS, terminate its employees and liquidate MMS assets in order to cash out her stock gift to JBU. (emphasis added).

WHEREFORE, plaintiff prays for relief as set out below.

## PRAYER FOR RELIEF

Plaintiff prays for Judgment as follows:

1.     That the Court decree a winding up and dissolution of defendant Major Market Stations, Inc.;

2.     That the Court entertain such proceedings as may be necessary or proper for the involuntary winding up or dissolution of said defendant corporation and, in that regard, make such orders for winding up and dissolution of said defendant corporation, as justice and equity require;

3.     Alternatively, that plaintiff be paid the fair value of its shares, in accordance with the provisions of California Corporations Code §2000, taking into account the possibility of sale of the entire business as a going concern in a liquidation;

EARL L. BOHACEK

**COMPLAINT**

4.    For costs of suit herein incurred; and

5.    For such other and further relief as the Court may deem proper.

DATED:  November 16, 2015        LAW OFFICES OF EARL L. BOHACHEK

BY:_____/s/ EARL L. BOHACHEK_____
EARL L. BOHACHEK,
Attorney for Plaintiff John Brown University

EARL L. BOHACHEK

**COMPLAINT**